Thank you, Your Honor. May it please the Court, my name is James Patterson, and I represent the petitioner, Mr. Armando Navarro, in this matter. And I'd like to reserve, excuse me, a minute for rebuttal. This is a petition for review of a decision of the Board of Immigration Appeals, which affirmed without opinion the decision of the immigration judge finding Mr. Navarro deportable for having been convicted of a crime involving moral turpitude and also finding him ineligible for relief based upon that finding that the crime of accessory under California Penal Code Section 32 is a crime involving moral turpitude. Mr. Navarro is a 40-year-old native and citizen of Mexico. His wife is a United States citizen. Two of his sons are U.S. citizens. Another is a lawful permanent resident. He remains the only em- This is accessory after the fact. This is accessory after the fact, Your Honor. Mr. Navarro was convicted in 1999 of accessory after the fact. And we argue that that crime is not a crime involving moral turpitude. As this Court is aware, moral turpitude is a nebulous concept. Generally, it's defined as something that shocks the public conscience, is inherently base, vile or depraved. In matter of flores, the Board of Immigration Appeals held that an evil or malicious intent is said to be the essence of moral turpitude and that that the test is whether the act is accompanied by a vicious motive or a corrupt mind. California Penal Code Section 32 punishes the harboring, concealing or aiding of a principal who's committed a felony with the intent that the principal may avoid or escape arrest, trial, conviction or punishment with knowledge that the individual has committed that felony. Under the approach that this Course takes in immigration cases to determine if moral turpitude inheres, we look at the statute. And if the most minimum conduct punishable under this statute involves moral turpitude, then it is a crime involving moral turpitude. Put another way, if that most minimum conduct does not involve moral turpitude, then this is not a crime involving moral turpitude. That's the categorical approach. Correct, Your Honor. And I believe that's the only approach that's of any value in this particular case because we really have no factual basis for this plea. On the record, page 356, I believe it is, there is just a notation, a handwritten notation adding count 5. It just says PC 32 Armando Navarro amended by interlineation. And again, that's on page 356. Other than that, there is no factual basis for this plea. So a modified categorical approach isn't really going to assist us. We are, I believe, stuck with the categorical approach here. And the most minimum conduct under this statute does not involve moral turpitude. In fact, there are Board of Immigration Appeals cases involving escape, which would be punishable under this statute. Again, escape is mentioned in Penal Code Section 32. And under the Board of Immigration Appeals decisions in Matter of B and in Matter of J, the Board of Immigration Appeals held, and those cases still stand, that escape, aiding one to escape from jail, does not inherently require any evil intent and, therefore, does not involve moral turpitude. Those were two cases interpreting Massachusetts law, again, of aiding someone to escape. In Matter of J, the individual actually helped saw through some metal bars in a window, apparently. The Board, again, did not find that that involved moral turpitude. And under Penal Code Section 32, aiding someone who has committed a felony to escape arrest, trial, conviction or punishment is punishable under this statute. And so, again, there is conduct here that is punishable under this statute that does not, by the Board's own precedent, involve moral turpitude. So what should the government have done differently if it wanted this crime to be viewed down the road as one involving moral turpitude? I don't know that there is anything that the government in this case could have done. He could have been criminally charged with a different statute, other than accessory, at the criminal phase of these proceedings, perhaps. But given this conviction, that, in fact, he pled guilty to accessory, they are stuck with that conviction and that conviction. Well, I understand that. But your assertion is that the record is just simply inadequate to conclude that this was a crime involving moral turpitude. All we have is Count 5, and it's just written in, and that's all we have. That's what you're saying, I believe. Right. And our first step is, again, under the categorical approach, to look at the statute. And so that's what I believe we're left to. So the government's error was in not more fully charging? What did the government do wrong? If it were the government's intent down the line to have this viewed as a crime involving moral turpitude, what should it have done differently? Perhaps I could envision a situation where they charged him specifically with harboring a criminal. That might have worked given the Sloan decision, the matter of Sloan decision. Harboring, and again, that Sloan decision is a decision by the attorney general after the board had taken a couple of cracks at the case. The attorney general then came in and said, no, this does involve moral turpitude. But he focused on a very broad definition of moral turpitude, saying that anything done contrary to justice involves moral turpitude, which is an extremely broad categorization of. Well, what does the Ninth Circuit say about moral turpitude? Your Honor, the Ninth Circuit has dealt with moral turpitude in various contexts. They have not dealt with accessory. They have not dealt with escape. They have not dealt with harboring or concealing. They have dealt with cases that do involve moral turpitude. And, again, they go with this standard definition that moral turpitude is inherently base, vile, or depraved. They have said that it doesn't require necessarily an evil intent for one to have a conviction for a crime involving moral turpitude. But they have found that willful commission of a base or depraved act, again, so this Court has not deviated from that baseness or depravity. Well, under accessory after the fact, for that to apply, the categorical approach, isn't it necessary to show that in every situation involving an accessory after the fact that moral turpitude would be involved? Yes, Your Honor. The government would need to show that. And you go to the categorical approach. And if you go to the categorical approach, then you look to the record in the case. And you look to the record in this case, and all you see is just a couple of words where the indictment was interlineated. And it just says 5 PC 32 Navarro Armando amended by interlineation. And this is a deal made by the State of California. Correct. Yeah. And they're not worried about moral turpitude or anything like that. They were not. And they were not intent on showing that. They're not thinking about immigration matters. They were not, apparently. They were not. Well, I mean, there's no indication that they were. And so they offered him a deal. And he pled to accessory after the fact. And then they dismissed all the other charges against him. Correct. Now, you have mentioned Sloan. Yes, Your Honor. And in order for this case to turn out in your favor, we would have to refuse to follow Sloan. Am I right? No, Your Honor. You would not. Why not? Sloan is more narrow. Sloan deals with harboring or concealing. Penal Code Section 32 talks about harboring, concealing, or aiding a felon. So, again, we believe that Sloan is more narrow, that they found surreptitious. Because of the word aiding. Yes. It allows simply for aiding, which could be providing food to an individual who you know has committed a felony. Okay. So you feel that Sloan is distinguished on that basis? Yes. I believe that Sloan is distinguished in that, one, the Attorney General interpreted, more interpreted very broadly, and, two, that they were dealing with what the dissent in Sloan said, I should say the dissent in one of the earlier decisions from the Board of Immigration Appeals, called surreptitious concealment. And then you would, we would have to somehow distinguish the Eleventh Circuit's holding in Itana on dealing with misprision of a felony? Yes, Your Honor. And, again, I believe that that is a different crime. That is not the California statute here. But misprision requires less misconduct than being an accessory after the fact, does it not? I don't know that I would concede that, Your Honor. Again, misprison of a felony is more indifference or passive attitude toward it. But, again, I believe under the California statute that could also be punishable. Conduct punishable as misprison of a felony could also be classified as aiding someone that you know has committed a crime. All right. Well, does that lead you to suggest that we can distinguish or do we have to simply rule differently from the Eleventh Circuit? You can distinguish that case, Your Honor. On the basis that there's something magically different between misprision and being an accessory after the fact? Correct. That aiding a known felon, again, which can be simply providing a meal to a known felon. It would go beyond the kind of misconduct that would constitute misprision, would it not? Again, I — If I'm correct in looking at misprision as kind of indifference and passiveness as opposed to being an accessory, which requires under any definition, I would think, some affirmative act to either help or comfort or do whatever a person does. I believe, again, that the statutes are different and that looking to the board's — the Board of Immigration Appeals' decisions on escape, which, again, is a minimal amount of conduct punishable under this statute, that this Court could find. I appreciate your direct answers. I've taken you over your time. I think our presiding judge will probably allow you the minute you ask for, hopefully. Thank you, Your Honors. Good morning, Your Honor. May it please the Court. Dan Goldman on behalf of the Attorney General. This Court should uphold the agency decision and deny the petition for review. The crime that Mr. Navarro-Lopez was convicted of, accessory after the fact, involves moral turpitude. His crime involves the active knowing interference with the enforcement of the law. And as the Court noted in the questions to Petitioner's counsel, the conduct that's involved here is actually more serious. We really don't know that, do we? I mean, here he's in the middle of a trial, I presume, and he's offered a deal. You know, just plead guilty to accessory after the fact. They just scribble in the penal code section and put his name in there. He pleads to it. That's true, Your Honor. That is all that we know. In a sloppy way. I would want to stand here and criticize how they did things in that Court. But I think that it is a sloppy way. Is it an all-or-nothing proposition, as counsel indicated previously, either? Yes. Yes, Your Honor, it is. And the point there is that the actual conduct itself is not a factor, or should not be a factor, in this Court's decision. Because the question is not whether what specifically Mr. Navarro-Lopez did or what any other individual might have or could have done. The question is, does this statute, by definition, meet the definition of a crime involving moral turpitude? Well, if anyone acts as an accessory after the fact, someone is committed an offense, and they come home and they tell their wife they committed an offense, and she gives them a sandwich and lets them stay in the house, and doesn't turn them in, is that an accessory after the fact? I think the first question there, Your Honor, to answer that question would have to go in a couple of steps. The first step would be to look and see, does that conduct under California Penal Code meet the definition of, for a conviction under the California Penal Code? If the California Penal Code or the California court said yes, then the next step would be to take it into the immigration context. What this Court and what the Petitioner is coming close to doing is raising almost a collateral challenge to the conviction, saying that, well, we don't know what happened. I would agree, Your Honor, there's not anything in the record as to the actual conduct. Well, what relief is he seeking ultimately? I think ultimately he would be seeking cancellation of removal or adjustment. Okay, so when the time comes for him to get the cancellation, then the Attorney General has the discretion. He can look back and say, well, okay, you did this. I'm not giving it to you, even though you've lived here so many years, and your kids are here, and your wife is here, and all the rest of it. Is that right? That's a possibility, Your Honor. I don't mean a possibility. It's the way it works, isn't it? Yes. Okay, so it doesn't make any difference one way or another. If the Attorney General doesn't want him, then when the time comes for one to ask for discretionary relief, just don't give it to him. I think that's correct, Your Honor. I mean, in this case, the first, the threshold question is whether he's statutorily eligible because the government alleged and would sustain that this was a crime involving moral turpitude. So the question that Your Honor is raising as to the exercise of discretion I think comes after the first question, the question of whether there's moral turpitude in this case. Well, I don't see. Where's the moral turpitude here? The moral turpitude, Your Honor, is that the crime of the California Penal Code accessory after the fact, California Penal Code Section 32, involves an active and knowing interference with the enforcement of the law. And in this case, the government would say that, would argue that the law. So if the wife hides her husband, she's an accessory after the fact. Is that right? Again, Your Honor, that would be the. Evangelia moral turpitude. The first question before the immigration question of moral turpitude would come into play. The first question is, would a California court convict that wife for giving that sandwich or comfort, whatever. Okay. Let's say they would. If the facts of that case sustained a conviction under California Penal Code, which requires the intent, the knowing involvement, if that question was answered in the affirmative, then the second question involving moral turpitude, yes, it would involve moral turpitude because it involved the active knowing, the intentional act to interfere with the enforcement of the law. And that's where this case is even more egregious than the law that was involved in. Why would that interfere with the enforcement of the law? Because the wife, for example, in Your Honor's hypothetical, the wife knows that the felony has been convicted. She is intentionally acting. It's not an inadvertent or involuntary act. She's intentionally acting to interfere with the enforcement of the law. How does she interfere? She gives him a sandwich and he stays there. If she is intentionally acting to prevent the enforcement of the law, whether it is the escape or harboring, concealing, aiding a principal, such that her conduct meets that definition of the California Penal Code, if that question is answered in the affirmative, then the government's position is that that conduct So all convictions of accessory after the fact are crimes involving moral turpitude? The short answer is yes, Your Honor, under this statute, under the California Code. Categorical, huh? Under the California Code. I wouldn't want to speak as to how Illinois or Wisconsin or some other State defines accessory after the fact. But that is, by necessity, that's the government's position, that categorically, this statute, a conviction under this statute, is a crime involving moral turpitude. No ifs, ands, or buts about it. No, Your Honor. Are you conceding that we shouldn't? Yes. Yes, Your Honor, it is. Are you conceding that there just simply isn't enough evidence before us to address the modified categorical approach? Yes. Yes, Your Honor. And you're also conceding that there isn't sufficient evidence before us to look at the underlying crime to determine whether or not it should be considered in determining whether or not this is a crime of moral turpitude? In other words, one of the arguments put on was that if the underlying crime was a crime of moral turpitude, then this should be viewed as a crime of moral turpitude. Correct, Your Honor. Turpitude. And so we don't even have to look at that because you're conceding we don't have the evidence to make that determination. On this record, no, Your Honor. Okay. I just want to clear that up so we can focus on the single issue that we've been addressing here today. This is a categorical approach. Good. I appreciate that so I can know where my energy should be focused on. Okay. Yes, Your Honor. Anything else? No, Your Honor. Subject to the Court's questions. Government will rest. All right. Then you'll give your 1 minute and 55 seconds to... Absolutely, Your Honor. All right. You may get something out of this before it's over with. Thank you, Your Honor. I would just note that, again, the government is focusing on some sort of active interference with government functions here. If you look at, for example, this Court's opinion in matter of Goldestein, where it was a failure to comply with the government reporting requirements, structuring financial transactions so as to not comply with those reporting requirements, that same element is involved in that crime, which was found not to involve moral turpitude. There's nothing that's inherently base or vile about aiding a felon by itself. Attorneys do that all the time, steer them through the legal process. Well, but this statute requires the specific intent, does it not? A specific intent that the principal may avoid or escape from arrest or prosecution. Correct. So it's not a bland event. Correct. Now, it is done with a specific intent that the recipient of all of this benevolence escape. Right. Or avoid, and so on. Now, a person can do a lot of things in the name of humanity that is not coupled with the motive that this guy escape or avoid prosecution or punishment or whatever the litany is. Correct. But under the board's precedent decisions, again, that find that escape is not a crime involving moral turpitude, even if you add that specific intent to help someone to escape, you don't arrive at a crime involving moral turpitude. So then you rely on the proposition that a holding that an escape does not constitute a crime involving moral turpitude, that perforce somebody helping somebody else escape does not. Actually, the board's decisions say aiding someone to escape. So they're actually, they cover conduct, again, that is within the parameters of California penal code. Do you recall whether that required a specific intent? It required, what the board said was aiding one to escape from jail does not require any evil intent. And, again, in matter of J. But this statute uses the word intent. And I'm focused now for a moment on the concept of whether or not this aiding an escape would be an intentional thing under the statute that you're talking about. Do you know? Yes. The matter of B said the individual was convicted of breaking and escaping, unlawfully aiding a prisoner to escape with the intent to aid the escape of the prisoner. Okay. Well, read me the California aiding and abetting statute. The accessory statute? Yeah. Every person who, after a felony has been committed, harbors, conceals, or aids a principal in such felony with the intent that the principal may avoid or escape from arrest, trial, conviction, or punishment. Now, is that considered under California law a specific intent crime? Have you ever checked that out? Your Honor, again, the case that deals with it is this. I just asked you if you checked that out. I believe that it is, yes. Well, did you check it out? I've looked at the cases, and I don't find anything that specifically states this is a specific intent crime. You don't know? I believe that California does interpret it as a specific intent crime. Well, give me a case that says that. I mean, you never know in these cases. I mean, you know, bank robbery is not a specific intent crime. You know that? I was not aware of that today. Well, I'm telling you that you actually made that decision. So this whole concept of specific intent is very fuzzy. It is fuzzy, and I don't believe that we've got to go there to make this decision. I believe, again, the minimal conduct, aiding someone to escape, is punishable under California Penal Code Section 32. Have you ever looked at CalJEC under aiding and abetting and what the elements of the offense are? No, I have not, Your Honor. Well, isn't that the first place you ought to look? I, again, was looking at immigration precedents here. I believe there's enough case law. We're talking about California law. And I believe there's enough case law here to decide this case under the categorical approach without resorting to that. Thank you, Your Honors. We basically have to define moral turpitude again. Isn't that what you're asking us to do? No. I believe you can rely on the Board's definition of moral turpitude to find, again, that escape, aiding someone to escape. Are we bound to rely on the Board's interpretation? You're not bound to, but they certainly were. And you're looking at their decision that they just affirmed. Okay. Thank you, Your Honor. Okay. Thanks. Let's see. The next case is submitted.
judges: Pregerson, Leavy. Beistline